## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JORGE COSTA,

    Plaintiff,

    v.

SERVICENOW, INC.,

    Defendant.

Civil Action No. 26-0501-TDC

## MEMORANDUM OPINION

Plaintiff Jorge Costa filed a Complaint in the Circuit Court for Montgomery County, Maryland against his employer, Defendant ServiceNow, Inc. ("ServiceNow"), in which he alleges a violation of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3–501 to 3–509 (LexisNexis 2025), and other state law claims based on the failure to pay certain commissions. After removing the case to this Court, ServiceNow filed a Motion to Compel Arbitration and Stay the Case, which is fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED, and this case will be stayed pending arbitration.

## BACKGROUND

### I. Alleged Unpaid Commissions

Plaintiff Jorge Costa, a Maryland resident with a decades-long career in sales, has worked for ServiceNow, a technology services company based in California, since 2012. In the Complaint, Costa alleges that ServiceNow failed to pay him two sales commissions to which he was entitled: a $236,845 commission for an approximately $7.3 million sale on September 24, 2024 and a $144,142 commission for an approximately $20 million sale on August 15, 2025. In relation to

both sales, Costa alleges that ServiceNow refused to pay him the commissions because he had "overperformed" and "overachieved to a degree that was outside normal" in comparison to his sales quota. Compl. ¶¶ 23, 32, ECF No. 4. Costa also alleges that ServiceNow's refusal to pay him the commissions violated ServiceNow's 2024 and 2025 Sales Compensation Plans, which state that "earned commissions shall not be adversely affected retroactively." *Id.* ¶ 37.

In the Complaint, Costa asserts three state law claims in the following numbered counts: (1) a claim for unpaid wages in violation of the MWPCL; (2) a claim of quantum meruit and unjust enrichment; and (3) a claim of promissory estoppel.

## II.   Arbitration Agreement

On March 29, 2012, at the outset of his employment with ServiceNow, Costa signed a document entitled "Service-Now.com At Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement" ("the Agreement"). *See* Agreement at 1, 7, Mot. Ex. A Attachment 1, ECF No. 15-2. In the Agreement, Costa agreed to certain provisions "[a]s a condition of my employment with Service-now.com, its subsidiaries, affiliates, successors or assigns (together, "the Company"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company." *Id.* at 1. One such provision was an arbitration provision, which states in part that:

> IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY . . . ) ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION . . . . DISPUTES WHICH I AGREE TO ARBITRATE, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY STATUTORY CLAIMS UNDER

> STATE OR FEDERAL LAW . . . . I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.

*Id.* § 10(A). The arbitration provision further states that the Company would pay for arbitration-related fees, except for the first $125 in filing fees arising out of an arbitration initiated by the employee.

In a section entitled "Remedy," the arbitration provision states in all capital letters that "neither I nor the Company will be permitted to pursue court action regarding claims that are subject to arbitration," and that "[n]otwithstanding, the arbitrator will not have the authority to disregard or refuse to enforce any lawful company policy, and the arbitrator shall not order or require the Company to adopt a policy not otherwise required by law which the Company has not adopted." *Id.* § 10(C).

In a section entitled "Availability of Injunctive Relief," the arbitration provision states in part that:

> BOTH PARTIES AGREE THAT ANY PARTY MAY PETITION A COURT FOR INJUNCTIVE RELIEF . . . INCLUDING, BUT NOT LIMITED TO, WHERE EITHER PARTY ALLEGES OR CLAIMS A VIOLATION OF THE [AGREEMENT] . . . OR ANY OTHER AGREEMENT REGARDING TRADE SECRETS, CONFIDENTIAL INFORMATION, NONSOLICITATION OR LABOR CODE § 2870. BOTH PARTIES UNDERSTAND THAT ANY BREACH OR THREATENED BREACH OF SUCH AN AGREEMENT WILL CAUSE IRREPARABLE INJURY AND THAT MONEY DAMAGES WILL NOT PROVIDE AN ADEQUATE REMEDY THEREFOR AND BOTH PARTIES HEREBY CONSENT TO THE ISSUANCE OF AN INJUNCTION.

*Id.* § 10(D).

In a section entitled "Voluntary Nature of Agreement," the arbitration provision states in all capital letters that the employee agrees that he is executing the agreement voluntarily, that he has asked "any questions needed for me to understand" the Agreement, including that he

3

understands that "I am waiving my right to a jury trial," and that he has been provided "an opportunity to seek advice of an attorney of my choice before signing this agreement." *Id.* § 10(F).

Finally, in a section on general provisions, the Agreement provides that it is governed by California law, that its provisions are severable, and that it is "binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns." *Id.* § 11.

## DISCUSSION

In the Motion, ServiceNow argues that pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14, and based on the Agreement, the Court must compel the parties to resolve this case by arbitration. Specifically, ServiceNow argues that the FAA applies to the Agreement, that the Agreement's arbitration provision is a binding agreement that is valid and enforceable, and that Costa's claims are covered by it. ServiceNow also requests that the Court stay this case pending arbitration.

## I. Legal Standard

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (quoting *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004)); *PC Const. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012). Treating a motion to compel arbitration as a motion for summary judgment is proper where documents outside the pleadings must be considered to resolve the motion. *See Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021) (stating that in denying a motion to compel arbitration, the district court "in effect granted summary judgment" on the issue); *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683–84 (D. Md. 2004); *accord PC Const. Co.*, 871

4

F. Supp. 2d at 477 ("Whether the motion [to compel arbitration] should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings."). Here, the Court will apply the summary judgment standard because resolving this dispute requires consideration of materials beyond the pleadings.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II. FAA

ServiceNow's request to compel arbitration is governed by the FAA, which provides that: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. A litigant in federal court may compel arbitration under the FAA upon a demonstration of: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision that purports to cover the dispute; (3) the

relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the other party to arbitrate the dispute. *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).

Three of these elements are not in dispute. As to the first and fourth elements, the present action constitutes a dispute between the parties, and Costa has refused to arbitrate the dispute by first pursuing his claims in court. As to the third element, there is no dispute that the transaction between Costa and ServiceNow, arising from an employment relationship as described in the text of the Agreement, related to interstate commerce.

As for the second element, there is no dispute that Costa's MWPCL and common law claims relating to two unpaid commissions are covered by the arbitration provision of the Agreement, which states that it applies to "any and all controversies, claims or disputes . . . arising out of, relating to, or resulting from my employment with the Company." Agreement § 10(A). The Court therefore addresses only whether the Agreement includes a valid and enforceable written arbitration agreement between the parties.

## III.    Arbitration Agreement

In determining whether a valid arbitration agreement exists between the parties, the Court applies ordinary state law principles governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). As Costa, in performing his duties for ServiceNow, worked remotely from Maryland and thus presumably entered into the Agreement in that state, Maryland law applies to the evaluation of the issue of contract formation. *See Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 467 (Md. 1988) ("[T]he law of the jurisdiction where the contract was made controls its validity and construction."). Under Maryland law, the formation of a contract requires an offer by one party, acceptance by another, and consideration. *Cochran v.*

*Norkunas*, 919 A.2d 700, 713 (Md. 2007).  An arbitration clause is "an independently enforceable contract" that is a "severable part of the contract." *Cheek v. United Healthcare of the Mid-Atl., Inc.*, 835 A.2d 656, 664–65 (Md. 2003) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967)).

Here, there is no reasonable dispute that Costa accepted and assented to the Agreement when he signed it on March 29, 2012.  Costa, however, appears to assert that no enforceable agreement to arbitrate exists between the parties because ServiceNow is "not bound" by the Agreement, either because Costa was the only party who signed the Agreement or because the Agreement was between Costa and Service-now.com, which is a different entity.  Opp'n at 2, ECF No. 16.  However, there is no requirement that a written arbitration agreement be signed by all parties bound by it.  *See Stephen L. Messersmith, Inc. v. Barclay Townhouse Assocs.*, 547 A.2d 1048, 1049 n.1 (Md. 1988); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000).  Rather, the fact that ServiceNow presented to Costa the Agreement with text committing both parties to arbitrate certain claims, when considered alongside its present effort to enforce the Agreement, "clearly implies" that both ServiceNow and Costa "would be bound" by the Agreement, including the arbitration provision.  *See O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 274–75 (4th Cir. 1997) (concluding that an employer that sought to enforce an arbitration agreement signed by the employee was bound by the agreement, because the agreement "was proffered by the employer" and because the employer "has, by virtue of this suit, shown its commitment to the arbitration process").

As for whether the Agreement binds ServiceNow even though it is a different entity than Service-now.com, ServiceNow has attached to its Motion a Certificate of Merger showing that Service-now.com merged with and into ServiceNow on May 22, 2012, and Costa has not disputed

this merger. The Court therefore finds that ServiceNow is the successor to Service-now.com. Where the arbitration provision of the Agreement binds "the Company," and the Agreement defines "the Company" to include Service-now.com and "its subsidiaries, affiliates, successors or assigns," Agreement at 1, 4, the Agreement is binding on ServiceNow.

The Court also finds that the arbitration provision of the Agreement is supported by adequate consideration. In determining the validity of an arbitration clause in a contract, the provision "must be supported by consideration independent of the contract underlying it, namely, mutual obligation." *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 609 (4th Cir. 2013) (citing *Cheek*, 835 A.2d at 665). Consideration may take the form of "[f]orbearance to exercise a right or pursue a claim," provided that it is a binding obligation. *Cheek*, 835 A.2d at 661. Here, the terms of the arbitration provision require both Costa and ServiceNow, outside of certain exceptions, to submit all disputes between them to arbitration, regardless of which party asserted them. Specifically, the arbitration provision states that, "in consideration of . . . [the Company's] promise to arbitrate all employment-related disputes . . . , I agree that any and all controversies, claims, or disputes with anyone (including the Company . . . ) arising out of, relating to, or resulting from my employment with the Company . . . shall be subject to binding arbitration," and it further states that it "also applies to any disputes that the Company may have with me." Agreement § 10(A). As noted above, the Agreement defines "the Company" to include successors and assigns of Service-now.com, *see id.* at 1, which encompasses ServiceNow. Thus, where both parties have agreed to submit their disputes with each other to arbitration, sufficient consideration exists for the arbitration provision to constitute a valid contract. *Cheek*, 835 A.2d at 665 (stating that "mutual promises to arbitrate act as 'an independently enforceable contract'" in that "each party has promised to arbitrate disputes arising from an underlying contract, and 'each promise provides

8

consideration for the other'" (quoting *Holmes v. Coverall N. Am., Inc.*, 649 A.2d 365, 370 (Md. 1994))).

The Court therefore finds that the arbitration provision of the Agreement constitutes a valid contract entered into and accepted by both Costa and ServiceNow.

## IV.    Unconscionability

In opposing the Motion, Costa asserts that the arbitration provision should not be enforced because it is unconscionable. Because the Agreement states that it "will be governed by the laws of the State of California," Agreement § 11(A), the Court must apply California law to determine whether the arbitration provision is unconscionable. *See Jackson v. Pasadena Receivables, Inc.*, 921 A.2d 799, 803 (Md. 2007) (stating that Maryland courts generally recognize contractual choice-of-law provisions).

"California law, like federal law, favors enforcement of valid arbitration agreements." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 678 (Cal. 2000). There is therefore a presumption in favor of arbitrability. *OTO, L.L.C. v. Kho*, 447 P.3d 680, 689 (Cal. 2019). Nevertheless, "[g]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC* ("*Pinnacle*"), 282 P.3d 1217, 1231–32 (Cal. 2012) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)); *see* 9 U.S.C. § 2. Although "[t]he party seeking arbitration bears the burden of proving the existence of an arbitration agreement, . . . the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle*, 282 P.3d at 1224–25.

Under California law, a "contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are

unreasonably favorable to the other party." *OTO*, 447 P.3d at 689. Unconscionability thus "has both a procedural and a substantive element." *Id.* at 689–90 (quoting *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 194 (Cal. 2013)). Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power," while substantive unconscionability "pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Id.* at 690 (quoting *Pinnacle*, 282 P.3d at 1232).

Procedural and substantive unconscionability "must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability," but "they need not be present in the same degree." *Armendariz*, 6 P.3d at 690 (citation omitted). Courts addressing unconscionability under California law apply a "sliding scale" approach under which "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *OTO*, 447 P.3d at 690 (quoting *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 749 (Cal. 2015)).

### A.    Procedural Unconscionability

The "procedural unconscionability analysis begins with an inquiry into whether the contract is one of adhesion," consisting of an agreement that is "standardized, generally on a preprinted form, and offered by the party with superior bargaining power on a take-it-or-leave-it basis." *Id.* (citations omitted). Costa asserts that the Agreement is a contract of adhesion because it was a standardized contract drafted by ServiceNow and was a precondition to his employment.

10

Where the Agreement appears to be standardized, does not specifically reference Costa apart from his signature, and expressly states that assent to the Agreement is "a condition of" Costa's employment, Agreement at 1, the Court finds that the Agreement is a contract of adhesion. Indeed, the Supreme Court of California has observed that "[a]rbitration contracts imposed as a condition of employment are typically adhesive." *OTO*, 447 P.3d at 690; *see, e.g., Serpa v. Cal. Sur. Investigations, Inc.*, 155 Cal. Rptr. 3d 506, 512 (Cal. Ct. App. 2013).

Under California law, "the adhesive nature of [a] contract is sufficient to establish some degree of procedural unconscionability." *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 751 (Cal. 2015); *see, e.g., Fisher v. MoneyGram Int'l, Inc.*, 281 Cal. Rptr. 3d 771, 780 (Cal. Ct. App. 2021). However, the degree of procedural unconscionability depends on the extent of oppression, which can occur "where a contract involves lack of negotiation and meaningful choice," and surprise, which can occur "where the allegedly unconscionable provision is hidden within a prolix printed form." *OTO*, 447 P.3d at 690 (quoting *Pinnacle*, 282 P.3d at 1232).

Here, there was a moderate degree of oppression. In general, the "circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *Id.* at 690–91 (quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 182 Cal. Rptr. 3d 235, 248–49 (Cal. Ct. App. 2015)).

As to the first factor, Costa states that his employer instructed him to sign the Agreement on a "take-it-or-leave-it" basis as a precondition to employment, but he does not state how much time he had to consider it. Opp'n at 9. However, where Costa signed the Agreement on March

11

29, 2012, and he has stated that he did not begin work until April 2012, the Court concludes that he did not sign it on his first day of work and that he did so at least several days, or possibly several weeks, before he actually started working for ServiceNow. As for the second factor, the arbitration provision of the Agreement was a pre-employment arbitration contract, in relation to which the Supreme Court of California has stated that "the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." *Armendariz*, 6 P.3d at 690. At the same time, Costa has not demonstrated the kind of "particularly acute" economic pressure that has led courts to find an employer's conduct to be "highly oppressive." *Mercuro v. Superior Ct.*, 116 Cal. Rptr. 2d 671, 676 (Cal. Ct. App. 2002) (finding a high degree of oppression where the employer threatened to blackball the employee, who had just moved to the state and was middle-aged, from the industry if he did not sign the arbitration agreement).

As to the third factor, the length and complexity of the agreement, the body of the Agreement consists of only six pages of text, and, as set forth below, the two-page arbitration provision was not particularly long or complex. As for the fourth factor, Costa does not assert that any lack of education or experience placed him at a disadvantage in bargaining power or the ability to understand the arbitration provision. Finally, on the fifth factor, the arbitration provision states that the employee has had an opportunity to obtain advice from an attorney before signing, and while Costa has stated that he did not have an attorney review the Agreement, he does not claim that he was not afforded the opportunity to do so. Thus, only the first and second factors arguably favor Costa to a certain degree. Nevertheless, where the Court must be "particularly attuned" to

12

the coercive effect of the pre-employment context of the Agreement, *see OTO*, 447 P.3d at 691, the Court finds that there was a moderate degree of oppression.

However, there was only a low degree of surprise. Surprise can be established through a showing that the arbitration agreement was difficult to read or understand. *See id.* (finding surprise where the agreement was "a paragon of prolixity" in that it was "written in an extremely small font," had a "single dense paragraph covering arbitration," and used sentences that were "complex, filled with statutory references and legal jargon"); *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1091 (9th Cir. 2024) (in applying California law, finding some surprise arising from an arbitration agreement where the substance of a cost-splitting provision within that agreement was difficult to understand). Costa argues that the Agreement is surprising because it contains "extremely long and difficult to understand run-on sentences" and "legal jargon." Opp'n at 12–13. While it is true that the arbitration provision contains at least one sentence that runs for as many as 13 lines and includes references to legal terminology such as statutes and rules, the provision is conspicuous in that it is clearly marked and printed in all-capitals text, referenced in the title of the Agreement, and subdivided into six labeled sections. The provision therefore is "not hidden in fine print or otherwise difficult to read." *Ronderos*, 114 F.4th at 1091.

Costa also asserts that the arbitration provision is surprising because it is difficult to determine to whom it applies, because it states that it applies to disputes with the Company, and the Company is not defined within the provision and only defined in a different part of the Agreement. However, the unconscionability analysis is undertaken in reference to a contract "at the time it was made," *see Armendariz*, 6 P.3d at 689 (quoting Cal. Civ. Code § 1670.5(a) (West 2024)), and as of that time in March 2012, the identity of the Company would have been clear to a prospective employee such as Costa. In any event, where Service-now.com merged into

13

ServiceNow in May 2012, approximately one month after Costa began working there, and where he then worked for ServiceNow for over 13 years, Costa's assertion that it would be difficult to determine that the Agreement applied to ServiceNow is unpersuasive.

Finally, Costa argues that the Agreement "contains confounding language concerning the scope of relief available in arbitration." Opp'n at 13 (citing Agreement § 10(C)). For the reasons stated below in the discussion on substantive unconscionability, *see infra* part IV.B, the Court agrees that some of the language in section 10(C) is confusing, but it also finds that any confusion does not render surprising the operative arbitration clause in section 10(A), which unambiguously mutually binds Costa and ServiceNow to arbitrate employment-related disputes. Overall, the Court does not find that the Agreement was "drafted with an aim to thwart, rather than promote, understanding." *OTO*, 447 P.3d at 692 (finding surprise based in part on the conclusion that the agreement had this purpose). Therefore, the Court finds at most a low degree of surprise.

In summary, although the arbitration provision is a contract of adhesion, where it involved only a moderate level of oppression and a low level of surprise, it is procedurally unconscionable only to a limited degree. The determination of whether the arbitration provision should not be enforced will thus turn on the degree of substantive unconscionability in its terms.

## B.    Substantive Unconscionability

As stated above, under California law, a court determining whether an arbitration agreement is substantively unconscionable examines "the fairness of [the] agreement's actual terms and . . . whether they are overly harsh or one-sided." *Id.* at 690 (quoting *Pinnacle*, 282 P.3d at 1232). In opposing the Motion, Costa advances several arguments on why the arbitration provision of the Agreement is substantively unconscionable.

First, Costa argues that the arbitration agreement is substantively unconscionable because it is not bilateral. *See Armendariz*, 6 P.3d at 692 (stating that a unilateral arbitration agreement that binds only the employee is unconscionable, absent a reasonable business justification). In support of this argument, Costa asserts that the provision is unilateral because its text, in using the language "I agree" instead of "the parties agree," binds only Costa. Opp'n at 15–16. However, the arbitration provision plainly binds both Costa and ServiceNow because it states that Costa's promise to arbitrate was given in consideration of "[the Company's] promise to arbitrate all employment-related disputes" and states that "I further understand that this agreement to arbitrate also applies to any disputes that the Company may have with me." Agreement § 10(A). Under such circumstances, "the mere inclusion of the words 'I agree' by one party in an otherwise mutual arbitration provision" does not "destroy[] the bilateral nature of the agreement." *Roman v. Superior Ct.*, 92 Cal. Rptr. 3d 153, 162 (Cal. Ct. App. 2009).

Costa further asserts that the arbitration provision is not bilateral because the Agreement does not purport to bind Service-now.com's successors such as ServiceNow, as it provides that the "Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns." Agreement § 11(D). Regardless of how this particular language is interpreted, as discussed above, the arbitration provision specifically binds "the Company," and the overall Agreement defines "the Company" as including "Service-now.com, its subsidiaries, affiliates, successors or assigns," *id.* at 1, so the arbitration provision is, in fact, binding on successors such as ServiceNow.

Costa also contends that the arbitration provision is not bilateral because it requires Costa to arbitrate his most important claims but permits ServiceNow to litigate its most important claims in court. Costa relies primarily on *Mercuro v. Superior Court*, 116 Cal. Rptr. 2d 671 (Cal. Ct.

15

App. 2002), in which the court found that an arbitration agreement was substantively unconscionable in part because it compelled arbitration of "the claims employees are most likely to bring," such as statutory claims alleging discrimination and breach of contract claims, but it excluded "claims for injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information," which are "the claims [the company] is most likely to bring against its employees." *Id.* at 677. The court concluded that this provision amounted to "an agreement requiring arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party." *Id.* (quoting *Armendariz*, 6 P.3d at 693).

Here, although the arbitration provision similarly requires arbitration of all statutory claims and all other employment-related disputes, it differs from the agreement in *Mercuro* because it permits both parties generally to seek injunctive relief from a court, "including, but not limited to" injunctive relief in relation to claims for a breach of the Agreement or "any other agreement regarding trade secrets, confidential information, nonsolicitation or [California] Labor Code § 2870." Agreement § 10(D). This provision is thus not as one-sided as the one at issue in *Mercuro* because it does not limit claims for injunctive relief to be pursued in court only to those that would likely benefit ServiceNow. Indeed, some of the non-exhaustive list of potential claims for injunctive relief, including claims for a breach of the Agreement and claims under California Labor Code § 2870 ("Section 2870"), which protects employees' rights to inventions developed on their own time, *see* Cal. Lab. Code § 2870 (West 2020), are equally or more likely to be advanced by an employee. The Court therefore does not conclude that this provision is so one-sided that it renders the arbitration provision substantively unconscionable.

Second, Costa argues that the arbitration provision is substantively unconscionable because it unfairly limits the remedies available in arbitration. The relevant clause states that "the arbitrator will not have the authority to disregard or refuse to enforce any lawful Company policy, and the arbitrator shall not order or require the Company to adopt a policy not otherwise required by law which the Company has not adopted." Agreement § 10(C). This language is difficult to parse. It is unclear, for example, whether this language would require the arbitrator to apply a ServiceNow policy placing a cap on commissions or otherwise limiting Costa's wages even if its application would constitute a breach of contract. The Court therefore agrees with another court that considered identical language that it is "entirely unclear what this sentence is intended to mean," but it "could be seen by an arbitrator as imposing unilateral limitations on his or her power that favor" the employer. *Davis v. Gazillion, Inc.*, No. C 10-743 RS, 2010 WL 2740002, at *2 (N.D. Cal. July 12, 2010). In *Davis*, the court struck the clause from the arbitration agreement based on this concern and then granted the motion to compel arbitration. *See id.* at *2–3. Here, where this provision could be read to favor ServiceNow to an unfair extent, the Court finds that it supports a finding of substantive unconscionability. Nevertheless, consistent with California law and the Agreement's severability clause, the Court may and will strike it on the grounds of unconscionability, such that it does not impact the overall assessment on this issue. *See id.*; *Armendariz*, 6 P.3d at 689 (stating that "[i]f the court . . . finds the contract or any clause of the contract to have been unconscionable," it "may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result" (quoting Cal. Civ. Code § 1670.5(a))).

Third, Costa argues that the arbitration provision is substantively unconscionable because it "requires [him] to consent to the issuance of an injunction and obviates the need for [ServiceNow] to show all the elements required for an injunction, including irreparable harm." Opp'n at 22–23. Costa relies primarily on *Alberto v. Cambrian Homecare*, 308 Cal. Rptr. 3d 230 (Cal. Ct. App. 2023), in which the court stated that "provisions that allow employers to seek a preliminary injunction outside of arbitration for breach of a confidentiality agreement are not, by themselves, unconscionable, simply because they primarily benefit employers," but "provisions that waive the employer's need to obtain a bond before seeking an injunction, waive the employer's need to show irreparable harm, and require an employee to consent to an immediate injunction *are* unconscionable." *Id.* at 238–39. Here, the relevant clause of the arbitration provision states: "Both parties understand that any breach or threatened breach of" the Agreement or any other agreement regarding trade secrets, confidential information, nonsolicitation or Section 2870 "will cause irreparable injury and that money damages will not provide an adequate remedy therefor and both parties hereby consent to the issuance of an injunction." Agreement § 10(D). Contrary to ServiceNow's claim, this language, as the *Alberto* court found in relation to similar language, "required [the employee] to agree in advance to the existence of irreparable injury, and . . . to consent to the issuance of an injunction" if the other factors are also met. *Alberto*, 308 Cal. Rptr. 3d at 239. However, the *Alberto* court found unconscionability largely because the provisions at issue were "not mutual," in that where the operative clause applied only to the employer's claims under its Confidentiality Agreement with the employee, the availability of court-ordered injunctive relief to enforce that agreement would "exclusively benefit" the employer. *Id.* at 238–39. Here, in contrast, the Agreement permits both parties to seek court-ordered injunctions for certain claims that would likely benefit ServiceNow, such as breaches of a confidentiality agreement, and for

other claims that would likely benefit Costa, such as breaches of Section 2870. Thus, where the clause on injunctive relief is mutual and could benefit both sides, it is not so one-sided that it is unconscionable.

Fourth and finally, Costa argues that the arbitration provision is substantively unconscionable because it waives his right to a jury trial "even to claims brought outside of arbitration." Opp'n at 23. Under California law, a provision of an arbitration agreement that waives the right to a jury trial "in the event that any controversy or claim is determined in a court of law" amounts to "an unconscionable predispute jury trial waiver." *Lange v. Monster Energy Co.*, 260 Cal. Rptr. 3d 35, 48 (Cal. Ct. App. 2020); *see Grafton Partners v. Superior Ct.*, 116 P.3d 479, 492 (Cal. 2005) (holding that "governing California constitutional and statutory provisions do not permit predispute jury waivers"). Here, however, the jury trial waiver applies only to claims that are required to be arbitrated. Specifically, the relevant language in the arbitration provision references "disputes which I agree to arbitrate, and thereby agree to waive any right to a trial by jury," which limits the jury trial waiver to the disputes sent to arbitration. *See* Agreement § 10(A); *Grafton Partners*, 116 P.3d at 484 (distinguishing predispute jury waivers from predispute arbitration agreements requiring disputes to be resolved by an arbitrator, which "are specifically authorized by statute"). Although a separate clause of the arbitration provision entitled "Voluntary Nature of Agreement" states in bold, capitalized, and italicized text that "I am waiving my right to a jury trial," *see* Agreement § 10(F), this language is not fairly read as waiving the right to a jury trial for all claims, including any adjudicated in a court. Rather, when read in context, the language in section 10(F) is best construed not as a substantive expansion of the jury trial waiver of section 10(A) but rather as a reiteration that the arbitration provision contains a jury trial waiver for claims sent to arbitration. The Court therefore finds that the Agreement waives Costa's right to a jury

19

trial only for claims sent to arbitration and thus does not include an unconscionable predispute jury trial waiver.

Thus, Costa's sole persuasive argument for substantive unconscionability is his challenge to the language on remedies in section 10(C) of the Agreement. Where that clause can and will be severed from the rest of the Agreement, the Court finds that the arbitration provision contains, at most, a very low degree of substantive unconscionability. Where Costa has demonstrated at most only limited degrees of both procedural and substantive unconscionability, the Court does not conclude that "the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *OTO*, 447 P.3d at 690.

As ServiceNow has demonstrated that an arbitration agreement exists between the parties and covers the relevant claims, and as Costa has not carried his burden to demonstrate unconscionability, the Motion will be granted. *See Pinnacle*, 282 P.3d at 1224–25.

## V.    Stay

In the Motion, ServiceNow seeks a stay of this case pending arbitration. The FAA states that when a court determines that the issues involved in a suit are "referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Accordingly, the Court will stay this case pending the arbitration of the dispute between the parties.

## CONCLUSION

For the foregoing reasons, the Motion to Compel Arbitration and Stay the Case will be GRANTED. A separate Order shall be issued.


Date: August 4, 2026

THEODORE D. CHUANG
United States District Judge

21